Technologies against Jaguar Land Rover. Mr. Freitas Raitis? How do we pronounce your name? Freitas, Your Honor. Freitas. Left that one out. This case presents a contest between dictionary definitions, although it's been presented as something else in a lot of the arguments that have been made. Vehicle Information Technologies, which I'll refer to as VIT, relies on the plain meaning of the term pages as it appears in the Microsoft Computer Dictionary. That's our core construction. One complete full screen image. And we submit that that construction... Is that dictionary referenced in your specification anywhere? It is not, Your Honor. Then why would we assume a computer dictionary would be something that a person of ordinary skill would look to in determining a patent related to a car? Because the field here, Your Honor, is computer graphics. That's what we're dealing with. And the display that's presented isn't a computer display. There are specific references to that in the patent. That's the reason why it's in that field. Now, this construction... Do you see the word page as referring to what we think of as a page, like a page in your brief, or as sort of a body of information lodged in the computer? I mean, I got the sense, and you may disagree, in reading the patent, a bunch of provisions, and it seemed that page was referring to not what I would think of normally as a page, but sort of information collected in the computer. Well, I think, Your Honor, what it refers to in the first instance is what the driver sees. The image that's presented to the driver. But there are also some references in the patent that suggest that the pages as they are stored also are called pages. But in each case, it is what is stored, it is what's in memory, as opposed to the disembodied information. But what's stored is information, isn't it? Yes, it is, Your Honor. It can be, anyway. But the distinction between the image that's stored, the data that are stored, and the information freestanding is an important one. This is where Jaguar Land Rover has gone astray. What they've tried to point to is the disembodied information, any information. Under their construction, my answer to Your Honor would be a page. It's a collection of information that could be displayed on a page. And that's the other problem that they have. They talk about what can be displayed, but in the patent and in the Microsoft Computer Dictionary... When I'm looking at the screen, well, not looking at the screen, but when I'm looking at the selectable area, the right side of the dashboard, so to speak, am I looking at a page? Yes, a page is what is displayed in the selectable area. That's what the patent says. That's one of the limitations in Claim 1 and some of the other claims. Can I ask you about... You have, as I read your brief, two arguments challenging the district court's construction. One says that the page has to have formatting, such as certain things. And the other is that it has to take up the full screen. And I guess I wonder about each of those. Let me start with the full screen. If I read, I think it's, is it Figure 2? I think it's Figure 2. Figure 2, your honor, yes. Figure 2 as showing the page as a component of the selectable area and the various words wrapping around, I guess, the top, around the border as not part of the page. What do I do with, on the assumption that I read it that way, what do I do with that conclusion? Because it seems to me that would pretty strongly suggest the page is not the full screen. It would suggest that, your honor. But I think that the patent shows quite clearly that those identifiers, 154, around the edges... I thought it was pretty clear to the contrary. That is that, I have Figure 2, right, that 154, I guess, are the identifiers. 156 is what you call the page. 122 is the whole selectable area, which is different from 156. We disagree with that, your honor. Your honor is correct that 156 is, 122 is the selectable area and 156 is the page. We don't think there's a difference. And we have an illustration of what would be necessary for there to be a difference. What would happen is that the page would be misshapen. In the bottom right here, where there's no identifier, the idea would be that this is a page with this part here and then that little indentation there. And that's not a realistic way to read Figure 2. Well, I mean, why not? Right. I mean, it seems to me if one starts in the abstract, without regard to this patent, and asks what does page mean in the computer world, it seems to me it does not, whatever else it has, it doesn't have a plain meaning. It has a variety of ordinary meanings. The page on the website, you can show the whole thing on a screen, but you're not typically looking at that page all at once on the screen, because that's what scrolling does. It moves things around. If one turns to the context here, it seems to me you have the use of the term page in the spec, in the elaboration on Figure 2, indicating it's not taking up the whole selectable area, because it talks about the identifiers as something different from the page. Well, I don't think it does, Your Honor. I don't think there's anything in the patent that portrays the identifiers as different from the page. Certainly the identifiers are separately mentioned, but there's nothing in the patent that calls them different from the page. That's what's being argued about. And what is it that makes you think that the page couldn't have something other than purely rectangular shape, that is the one with the little L, the alcove? Well, there's a variety of things, Your Honor. First of all, we'll go back to, and I would disagree with Your Honor about whether there's a plain meaning. We think there is a plain meaning, as demonstrated in the Microsoft Computer Dictionary. Well, what do you do with the example that I gave? When I go to the Wall Street Journal homepage, I'm not looking at the whole thing the whole time. And that's sort of on one hand. I don't have to look at the whole thing. And the other thing is on my screen, I have maybe two windows, and I have that up and something else up. It's not taking up my whole screen either. I'm just not sure where I get the notion that everybody knows that a page, even in this broad context, is something that fills the screen and neither is a component of the screen nor extends beyond the screen. So let's say Your Honor is looking at the Wall Street Journal, and the Wall Street Journal is up on the page, on the screen. It is filling the screen. Well, why do I scroll all the time? You scroll to look at something else. It's on the same page. I'm not clicking. I'm not getting anything. I mean, they call it a page. On the same page. How are you using that term, Your Honor? But my only point is that term has no plain, determinate meaning outside a particular context. It has a range of meanings, and we use it even in the computer world in a variety of ways. It is true, Your Honor, that there are different ways that the term gets used, just like there are different ways that a page of a book is addressed. But the foundational idea is what's set forth in the Microsoft Dictionary. If you had wanted to use that dictionary definition, why didn't you put it in? I mean, you seem to think that the Microsoft Dictionary is controlling for all computer graphics, but I don't see anything to suggest that that's the case. There's probably other computer dictionaries that have other definitions of pages. There might be, Your Honor, but this one's authoritative. It's been cited. This edition of this Microsoft Dictionary has been cited numerous times by this court and by other courts. This dictionary is authoritative, but we start with this idea that there is a plain meaning as shown by that dictionary. We did present it, Your Honor, and the question then becomes what is there in the patent that takes away from it? And the idea that Judge Toronto expressed that the identifiers are stated to be different from the page, I don't think that's borne out by the patent. There certainly hasn't been cited anything by Jaguar Land Rover that shows how it's different. They tried to make an argument based on Claim 19, and what they said about Claim 19 is that it somehow shows they're different. But all it says is that the identifiers are displayed. I'm looking for the language. See, I guess I was thinking of Column 4, Lines 61 to 65, that seems to use selectable area, page, and identifier as three separate things. Simple as that, without saying, and by the way, the identifiers are part of the page. Well, certainly, Your Honor, there's something different there. But what it says on Line 61, one or more areas within selectable area 122 can be reserved to display identifiers 154 for some or all of the pages. That doesn't say they're not part of the page. It does say that they're a different function, if you will. But it doesn't make them different. Different words are being used because, just like if you said the parameters, that would make the parameters not part of the page. And the parameters are also repeatedly discussed in using a separate word. But that doesn't signify that there's something different. And by the way, on the parameter point, one of the arguments that Jaguar Land Rover has made is that all that's required is that there be a parameter. Well, we know that's wrong because in Column 5, Lines 9 to 13, there's a reference to a welcome page. The welcome page does not have parameters. It's not a subsystem page. We know from that that what Jaguar Land Rover says is wrong. It isn't the case that all the patent requires is that the page have parameters because the welcome page does not. And you should just know you're into your rebuttal time and we do have four full cases, so you can continue or reserve the remainder. I'll reserve here. Okay, thank you. Thank you. Mr. Moore. Good morning, Your Honors. May it please the Court. The issue before us today is whether the District Court got its construction of pages correct. The District Court construction of pages is correct because it's consistent with the intrinsic evidence. It's consistent with the claims and the specification that both describe the invention having a display. And you can see this in Figure 2. It's a single display with three areas, a fixed area, a selectable area, and two warning areas on the outside. How do we know that some of those are not overlapping with others? I kind of take it one way of thinking about Mr. Freitas' argument is that 156 does take up all of 122, but there's an overlay on it of 154. Well, there's two reasons you know that. First, well, that's slightly different. We know the fixed area and the selectable areas and the warning areas don't overlap because the claim requires that the fixed and selectable areas are unique and static. And the Court interpreted that based on prosecution history to require them to be unique and static is not to have overlapping boundaries. With regard to the identifiers 154 and the page 156, we know that for two reasons. We know that because the specification in Column 5, Lines 9 through 10, says the selectable page can only display the identifiers. And right in that portion that you were citing where it talks about identifiers and then it talks about pages, it says it can only display the identifiers, not the pages. So we know the identifiers are separate. We also know it from the markings on Figure 2. If you look at the markings on Figure 2 and the reply brief at page 16 as a nice figure for this, you can see that the line for 122 goes to the boundary of the selectable page. Right, but I can't quite tell, I guess. It's true that the line from 122 and the line from 156 terminate at different places, but that doesn't tell me entirely whether, for example, what's meant by 156 is, yeah, it doesn't tell me what's meant by 156 except that it's different from 122. It could be essentially the entire area taken up that includes the identifiers, with the identifiers viewed as part of the page. I would suggest that the fact that it shows a difference is important because what it shows is 122 being drawn to the boundary shows that's actually the boundary of the selectable area. But the 156 doesn't have the same boundary as the selectable area. It's different. It goes to the area that's shown, just like 154 goes to the area of the identifiers. But I think there's two important points here. First, you don't even have to get to the identifiers being part of a page to know that VIT's construction is wrong. Because the claim and the specification both describe a page, a display, a complete screen, and the pages are only in the selectable area at most. They're not in the fixed area. They're not in the warning areas. So we know, based on the specification, that the pages do not have to be a complete screen or a complete display because they're not in the fixed area and they're not in the warning areas. So that alone rejects VIT's construction on its face. So do you read the word page as describing what is displayed or is it a description of information lodged in the computer or is it both? The patent talks about pages in terms of the information displayed. We know that for a few reasons. First, we know it based on the claims. The claims teach us that each page includes at least one parameter regarding each one optional subsystem. So the claims talk about pages in terms of what's displayed at, the parameters related to the subsystem. We also know it based on the specification, where it describes pages in column four, lines 13 through 15, as, quote, pages of information that are used to adjust the parameters. So that suggests it's information, a collection of information, as opposed to something on the screen, although it could be it's brought up on the screen. Correct. And that's why if you look at what Judge Andrew did here, looking at the claims and the specification, he looked at figure two and he saw how the pages weren't the complete screen. They were just at most the selectable area. And he defined the term pages consistent with the claims and the specification to be a collection or section of information that can be displayed on the screen at one time. But not necessarily displayed on the screen. It could be just lodged in the computer before it's brought up on the screen. Correct, because it can have multiple pages. It can call up different pages at different times. I'm a little bit confused about that. I mean, it still has to be connected to a display, right? I mean, the patent can't just be on information. Correct. There's a whole other computing element to the claim. They would have a far larger problem if they were trying to patent information. Correct. So it's information in various formats that can be called up to a display. Correct. Correct. And so because the VIT's construction is inconsistent with the claims and the specification on trying to require it to be one complete full screen, we know that's incorrect. With regard to the second part of the VIT's construction, it really changed their position. At the district court, formatting was the key to their construction and how they tried to distinguish the Mercedes prior item. And what we know now is there's simply no support in the specification for requiring the formatting. Is there an agreement about what formatting means? Because I'm having a hard time imagining, literally a hard time imagining, unless I were looking at a Jackson Pollock screen, what a screen would look like without formatting. That's exactly right. That's the same question that Judge Andrews had below. And there was a long back and forth between Judge Andrews and the district and VIT's counsel, which is on A1914 through A1916, asking those exact questions. What is the difference between the formatting in the patent pages shown on two and four and the formatting on the pages of the Mercedes? And after a long dissertation there, the only distinction VIT's counsel identified was that the pages in the patent had what he called stylized fonts. Their expert referred to them as being aesthetically pleasing. But if you look at page 19 of the reply, they've walked away from all that. On page 19 of the reply, for the first time, they say none of these specific types of formatting are required. Their proposed construction, I think on this point, was formatting such as, so it wasn't even limited to those particular things. And that led me to wonder what meaningful addition to the claim language there would be if you said require formatting. There would be none under what they've said on pages 17 through 19 of the reply brief. But what they argued to the district court was their expert relied on that formatting limitation to say the formatting had to be appealing or aesthetically pleasing. VIT's counsel relied on the formatting to say it had to have stylized fonts. It had to have something more. But this is where Judge Andrews found two things in his orders. First, that our construction of pages is correct. And VIT agrees if the district court's construction of pages is correct, summary judgment should be affirmed. But two, there's simply no reasonable construction that could have distinguished the pages shown in figures 2 and 4 of the patent from the Mercedes pages shown on page A714 of the appendix. Did the two of you have expressive view in your briefs here about whether in order for there to be a reason to disturb the district court's judgment, we have to agree with VIT on one or the other or both of their two points, the full screen point and the formatting point? Suppose they're right about one or the other. Jaguar Land Rover doesn't care if they're right about any of it because even under VIT's construction. I assume your answer is under any construction, but persuade me. The two parts of their construction are one complete full screen that includes formatting. If you look at the joint appendix on page A694, it shows the Mercedes dashboard, which has a fixed speedometer and fixed gas gauge and fixed RPMs, but with a small screen in the middle of it. And then on page A714, the Mercedes shows what pages can be displayed there. And you can click through the pages based on the buttons. And this is the one with the, I don't know what you call it, the kind of the blowout of the 789 or 678 or something. Well, it's got all the different boxes next to each other of all the different pages. You had that. A714. Well, in your brief, I think you had that picture. Yeah, we do have it in the brief. Right. Do 5, 6, and 7 appear simultaneously on that screen, or those are alternatives that could appear on that screen? They're alternatives. Okay. What you can see by the arrows, you see the black arrows that are up and down? Those are controls. Moving from one to the other? Yeah, those are controls on your steering wheel. You can page up or page down, and you can go from 1, 2, 3 through all these different pages. That's how it's programmed. And you can see here how this page will satisfy any claim construction because the pages here are just like the pages in Figures 2 and 4. They're both text and boxes. Pages in Figures 2 or 4 are text with boxes next to them. The pages here are text and boxes. If anything, the pages here have more formatting because they've got the vertical adjustment bars. That's the box with the plus at the top and the minus so you can scroll up and down your list. It's also got what the patent expressly teaches as formatting, highlighting. You can see if you look at box 5, for example, the Fahrenheit is highlighted because that's why you want Fahrenheit to show on your dashboard as opposed to Celsius. It does it for the text, whether you want English versus another language. So even if VIT's construction was adopted so you had one complete full screen that included formatting, the Mercedes prior art would unquestionably find that. And that's why Judge Andrews found under no construction could you possibly include Figures 2 and 4 of the patents pages and exclude the Mercedes patents. That's also why Judge Andrews went further to find that VIT's construction was not even close in its claim construction order and in his brief on attorney's fees because we've not only won the claim construction and summary judgment order here. But since that, we submitted a 28-J letter on January 8th of this year where Judge Andrews found attorney's fees were awarded partly because of the exceptional claim construction. And Judge Andrews found the part of VIT's proposed construction requiring formatting is so lacking in support that its unreasonableness stands out. And Judge Andrews sees a lot of patent cases. So it's a good basis of information to know when a patent case stands out. And for all these reasons, we think the district court's construction should be affirmed and the finding of summary judgment should be affirmed. Unless there's any further questions? Thank you. Mr. Freitas, you have three minutes. Thank you, Your Honor. First of all, with respect to the point about information, Judge Schall, if you take a look on, I've lost it in my notes, but the patent refers to pages of information. Information is what goes on the page. The page itself is not mere information. And that reference in the patent to pages of information makes clear that the page is distinct from the information. That's one of the major problems with the district court's construction. The district court said information is a page. That can't be true when we have a page of information. How does the difference that you're arguing between the content of a visual representation and the visual representation bear on the anticipation question? This is a 102B kind of anticipation, not actual publication. Well, the way it bears, Your Honor, goes to how the claim constructions size up to this prior art. And let me just point out several things about that. First of all, we do not advocate for reversal based on the formatting point. That's presented as a claim construction issue. We do not say that it solves this case. But let me make a point about the formatting. Was that not an independent basis for saying, I guess, for anticipation you would have to have? Not in our brief in this court. We did not argue formatting. Let me make a point about formatting. Mr. Moore suggests that there's no requirement for formatting and that plain text would do the job. Think about those two images in their brief. The Lincoln, the bluish one, and the Mercedes, the other one. Mr. Moore just mentioned a feature of the Mercedes. When I think of plain text, I think it's formatted. I'd read from left to right. It has a certain font, a certain typeface. It's on a part of the page. How is that not formatted? Given the purpose of the invention, something different is required. Let me explain. The purpose of this invention is to allow the driver to keep his or her eye on the road and to avoid distraction. If what we had is plain text formatted as formatting means under Microsoft Word, the purpose of the invention could not be met. I use Helvetica typeface with a nice, clean, easily, instantly recognizable meaning or representation of a word. The point of simple terms is it must be sufficient to call the driver's attention to the information. Mr. Moore mentioned the languages. Well, one of them was highlighted. It has to be something that would enable the driver easily to see the information. Simply using font A or paragraph structure B wouldn't necessarily meet that problem. But that's not the basis that we're arguing. You should pay attention to your clock. You're actually over time, so if you can literally wrap up in two sentences, please. One point I'd like to make in closing. On page 12 of Exhibit EE of the defendant's evidentiary appendix in the trial court, the Mercedes user manual states that the illustrations do not necessarily match up with the vehicles. All Jaguar presented regarding the Mercedes was the illustrations. The record shows that they may not be accurate. They cannot provide a basis for affirmance. Thank you. Case is submitted.